UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFERY STEVEN ROSE,

          Plaintiff,        Civil Action No. 16-12622
                                      Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14[1], 15], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20], AND AFFIRMING DECISION OF THE ALJ

Plaintiff Jeffery Steven Rose ("Rose") brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c), and 1631(c)(3), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income (SSI) and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, #15, #20), and Rose filed a reply brief. (Doc. #23). The parties have consented to this Court conducting all proceedings, including entering a final judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. #16). A hearing was held on September 7, 2017, where Rose's attorney, Lewis M. Seward, and the attorney for the Commissioner, Amy C. Bland, appeared by telephone.

**I.    BACKGROUND**

Rose filed applications for SSI and DIB on August 21, 2013, alleging disability

---

[1] Plaintiff mistakenly filed two identical summary judgment motions. The Court's citations will be to the latter one.

beginning December 1, 2005.[2]  Rose's claims were initially denied by the state disability determination service ("DDS") on November 19, 2013, and he subsequently requested a hearing before an ALJ.  ALJ Mark Kim held a hearing on May 12, 2015, at which Rose, acting *pro se*, and a vocational expert testified.  (Tr. 25-54).  On July 16, 2015, ALJ Kim issued a decision finding that Rose was not disabled through the date of the decision.  (Tr. 10-20).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Rose's request for review on June 9, 2016.   (Tr. 1-3).  Rose, now represented by counsel, timely filed his instant complaint challenging ALJ Kim's decision. (Doc. #1).

## II.     ANALYSIS

Rose's challenge to the ALJ's decision fall into two categories: (1) that the ALJ failed to develop the record; and (2) that the RFC adopted by the ALJ is not (in a few separate respects) supported by substantial evidence.  For the reasons stated on the record, including the following, these arguments lack merit.

### Rose's Argument that the ALJ Failed to Fully Develop the Record

The parties agree that absent special circumstances, the claimant has the burden of providing a complete record, and that those "special circumstances" exist only when the claimant: (1) appears without counsel; (2) is not capable of presenting an effective case; and (3) is unfamiliar with the hearing procedures.  *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002).  The hearing transcript in this case makes clear that despite having certain mental limitations, Rose did not meet the second and third "special circumstances."  This was Rose's second hearing before an ALJ, so he was familiar with the hearing process.  The

---

[2] Rose had filed prior SSI and DIB applications on August 19, 2008, in which he alleged a disability onset date of November 2, 2005.  After a hearing on those claims, ALJ Peter N. Dowd denied them in a written decision dated January 6, 2010.

transcript reflects that the ALJ explained the hearing procedures and Rose's rights, and that Rose understood them. As to his desire to proceed without an attorney, Rose explained that he was "nauseated" by the "T.V. commercials … about disability attorneys …" (Tr. 31). He later referenced a negative experience he had when he was represented by an attorney in an insurance dispute. (Tr. 46). Most importantly, Rose repeatedly answered the ALJ's substantive questions directly and cogently. The one question and answer Rose highlights in his brief (Doc. #15 at 11, citing Tr. 47) in which the ALJ asked Rose whether he objected to the vocational expert's ("VE")'s qualifications, does not change the analysis. Rose answered, "No sir," and later reiterated that he did not challenge the VE's qualifications. (Tr. 47). In between, Rose added a comment that suggests he understood, at least generally, what the VE would be testifying about; Rose explained how individuals at Saginaw Community Health had helped place him "out in the workforce…" (Tr. 47). Additionally, as the ALJ referenced in his decision, the record includes a consulting doctor's finding that Rose's "thoughts were spontaneous, logical, and organized…He provided lots of details…" (Tr. 17, 252).

Moreover, the substance of the documents that Rose says should have been included in the current record were discussed in the prior ALJ's earlier decision and/or by the consultative and DDS psychologist (and thus were before ALJ Kim[3]), or are simply immaterial in light of the other substantial evidence in the record. The Court notes that Rose's instant application contains no indication of a bipolar disorder, and the record was replete with evidence that Rose's re-fracture of his foot resulted only in him receiving a "walking cast," and that he continued to enjoy going on walks and riding a bicycle. (Tr. 40, 41, 176, 177, 202, 244-46, 252). Rose also testified that while the issue caused his foot to be "crooked," it does not cause him any pain. (Tr.

---

[3] Indeed, ALJ Kim specifically adopted the 1996 IQ report's finding of borderline intellectual functioning.

45).

### Rose's Arguments that the ALJ Adopted an Improper RFC

Contrary to Rose's arguments, the ALJ was not required to base the RFC upon a physician-determined RFC. *Sparrow v. Comm'r of Soc. Sec.*, No. 15-11397, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016). Rather, the ALJ's obligation was to determine an RFC that is supported by substantial evidence in the record. ALJ Kim did that here in adopting the following RFC:

> medium work … except he can frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; he is limited to simple, routine, and repetitive tasks; and he is limited to work with no interaction with the public, and only occasional interaction with co-workers.

(Tr. 16).

In terms of the physical demands of medium work which Rose challenges, the record contains his own self-reports and testimony of lifting the applicable amount of weight in his prior work, as well medical and other record evidence supporting that level of work. (Tr. 16, 17, 38, 187, 188, 244). As for walking, the ALJ appropriately noted Rose's own self-reports and Dr. James Braseur's findings that Rose could ambulate normally. (Tr. 244, 246, 252). The ALJ also noted Rose's daily activities, including walking, riding a bike, mowing the lawn, doing chores, and cooking meals. (Tr. 17).

As for Rose's mental limitations, the ALJ appropriately noted that Dr. Braseur found that Rose's "recall of various things in the past was extremely sharp." (Tr. 17, 243). He also cited consulting Dr. Nathalie Menendes' findings, which include that during her evaluation of Rose, he was "cooperative, calm, open, and friendly… [his] contact with reality was good. His insight was adequate . . . [his] thoughts were spontaneous, logical, and organized. He was very talkative… [and] provided a lot of details…His affect was appropriate…[he] was oriented to

4

time, person, and place." (Tr. 17, 252). Dr. Menendes also found that "[r]apport with [Rose] was easy." (Tr. 17, 251). Dr. Menendes' findings also showed that Rose was aware of current events. (Tr. 253). Rose also reported having close relationships with his parents, sisters and children, and having some other "good friends," as well as a girlfriend. (Tr. 14, 251). And he reported that he enjoyed reading magazines. (Tr. 17, 252). He also reported taking care of a young daughter by himself for three years during the period for which he claims he was disabled. (Tr. 251).

Mark Garner, Ph.D., reviewed the record and determined that Rose was "not significantly limited" in his ability to: remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; perform activities within a schedule; maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 81). The ALJ was well within his rights to rely on this opinion in formulating his RFC, 20 C.F.R. § 404.1527(e)(1); Social Security Ruling 96-9p, 1996 WL 374180, at *1 (July 2, 1996), and all of the foregoing show that the ALJ's RFC adequately addressed Rose's anxiety, social limitations, and concentration deficits.

The ALJ also appropriately discounted Rose's allegations of disabling impairments because they were contradicted by the record evidence, including his interactions with the consulting examiners and the ALJ himself at the hearing. (Tr. 17). The Court also notes that Rose reported that he stopped work due to a "lack of work," not his alleged impairments. (Tr. 167, 173, 199).

### III. CONCLUSION

For the foregoing reasons and those set forth on the record, the Commissioner's motion

5

for summary judgment **(Doc. #20)** is **GRANTED**, Rose's motion for summary judgment **(Docs. #14, #15)** is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: September 8, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2017.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager